Good morning. Our first case for argument this morning is Adams Outdoor Advertising versus the City of Madison. I see Mr. Potts and Mr. Blanian. Can you hear me? All right. Thank you very much. You may proceed, Mr. Potts. Good morning. May it please the court. My name is Brian Potts and I'm here today representing Adams Outdoor Advertising. Can you hear me okay? Yes. Great. If I break up, I hope you please We stand before the court today because the City of Madison does not like my client's business and my client does not like what the City has been doing to its business for the last 30 years. The City of Madison sign ordinance has caused Adams aging sign inventory to slowly deteriorate over the last three decades. And let's be clear, that is what the City of Madison intended when it enacted the sign ordinance at issue in this case back in the late 1980s. Madison sign ordinance is 70 pages long, single-spaced, and it's complicated. Our briefing has pointed out numerous ways in which we think the City's sign ordinance is unconstitutional, but really there are two primary legal issues in this case. The first is whether a 1990 declaratory judgment action precludes Adams' lawsuit here. I feel that our briefs, and in particular our unless the court has specific questions about it. I do, Mr. Potts, have a couple of questions about the preclusion argument. The judge found that most of your suit is precluded with the exception of the challenge to the digital sign provision in the ordinance, which is of more recent vintage. And the judge focused on the constitutional claims that were brought in the litigation in the 1990s in state court. There were some takings clause claims, inverse condemnation claims, preemption claims, but they were also constitutional claims brought in that litigation long ago. And the ordinance has changed in some respects since then, notably the digital sign provision, but the text of the challenged provisions, most notably the distinction between on-premise and off-premises advertising signs, billboards, is largely the same with the exception of the 2017 amendment that omitted non-commercial sign uses from the definition of advertising signs. So we need to grapple with whether there's anything materially different in the provisions that you're specifically challenging here from the ordinance as it stood in the 1990s when it was litigated and the ordinance as it stands now, and you're bringing similar constitutional claims. And then we can get to the declaratory judgment exception. Okay. Well, I was going to say, with all due respect, I would, I guess, reverse those because I don't think this court needs to get to what provisions have changed because of the Wisconsin Supreme Court in Barbarian has pretty unequivocally said that any action for declaratory rulings does not preclude a further lawsuit. And I think the facts in Barbarian are pretty instructive. In Barbarian, the first lawsuit that was brought actually included requests for actually had a damages claim in it. And what the Supreme Court said was, and I'll quote here, we agree with the rule as set forth in the restatement that a declaratory judgment is only binding as to matters which were actually decided therein and is not binding to matters which quote might have been litigated in the proceeding. Here, the 1990 litigation was, to our knowledge, with a limited, very limited files, we have never decided. And in our opinion, and we have provided all of the claims for relief in our actual initial brief, there was no request for damages. So under the Wisconsin Supreme Court Barbarian's decision, we feel that that action has no preclusive effect. Now, with that said, and- If I could interrupt for a moment and forgive the interruption, there was a request for injunctive relief for the commencement of condemnation proceedings under the Wisconsin statute for inverse condemnation. Yeah. That didn't deal with the constitutional claim or the First Amendment claims that dealt with the Takings Clause claims. Yeah, exactly. That dealt with the Takings Claims related to a different set of billboards. First of all, the ones that were actually removed from the square in Madison in the 1983 ordinance. But more importantly, that is not a request for damages in that action. If they were to pursue damages pursuant to a Takings Claim, they would have had to file another action under Chapter 32 in Wisconsin's condemnation proceeding. So basically, from a practical perspective, that original complaint in that action, the court would not and could not have awarded damages in that action. It would have had to have been a subsequent action, which we don't have. Now, one other thing I'd like to point out on the claim preclusion since we're talking about it, just for efficiency's sake, is the city is the one that has the burden here of proving claim preclusion. The city knew about this 1990 lawsuit and the settlement before filing its summary judgment briefs in this case. The city never raised it as a defense. We can only guess why, but I assume it's because they thought the argument was a loser. We don't have any of the files from that original case. We don't have any of the decisions from that 1990 case. It was 30 years ago, and I think we can all agree that the action brought by Adams now, the remedies that they are seeking now could not have been given by the court in that original action. 30 years have passed. The law has changed substantially. The ordinance has been fully revoked and reissued while some of the provisions stayed the same. From a practical perspective, the city literally revoked the entire ordinance and reissued it twice. So I just think in this situation, the district court's decision was grossly inequitable, and I also think the district court either didn't analyze Barbarian well enough or maybe missed the language where Barbarian actually says it had to be decided, the declaratory ruling, and in this case, to our knowledge, again, because we don't have any of the files, it was never decided. And Judge Peterson injected this issue or didn't. It was preserved as an affirmative defense, but it wasn't litigated until Judge Peterson asked for briefing on this, as I understand the procedural posture of this issue. Exactly, which again I find particularly odd in a situation in which the city is the one with the burden of proving claim preclusion. The city never even raised it as defense until the court sua sponte raised it. And I don't challenge that the court didn't have the power to do that. I just frankly don't agree with the court's analysis of Barbarian or the original complaint. And I would just ask the court, the actual request for relief in that original complaint, we haven't, they're very short and they all say they're requesting declaratory rulings or judgments. One other issue, just before I turn to the constitutionality, I want to make sure it's a factual, it's very important, I feel. The only complaint we have in that action is the first complaint. There was a second amended complaint. No one has that. So we don't know whether the actual action that happened back in 1990 even included the claims regarding constitutionality that are similar to some of the ones today, because we don't have the final complaint. We only have the first one that was filed. Again, it's an odd situation in which we don't have any of the files from the court. I was surprised by that when we all asked the court for the files, but I guess it is what it is. So turning to the second issue, which I think is at least personally more interesting, and anytime you get to argue a first amendment case, I think that's, at least as a lawyer, I find that pretty cool, is the city of Madison signed ordinance unconstitutional? And we believe it is in numerous respects. In fact, the ordinance has so many unconstitutional provisions, it's difficult to even list them all in the brief or discuss them during oral argument. A recent U.S. Supreme Court decision, Reed, and four circuit court decisions all support Adams' claims here that the city's ordinance is unconstitutional. The Supreme Court's Reed decision from 2015 says all facially content-based schemes like the one in Adams' ordinance, I'm sorry, in Madison's ordinance, are subject to strict scrutiny, which Madison's ordinance cannot meet. Earlier this year, the Fifth Circuit and Reagan found that a less restrictive, say that again, less restrictive digital ban than the one in Madison's ordinance is unconstitutional, and that the on-premises, off-premises distinction, again, like one in Madison's ordinance, is content-based and subject to strict scrutiny. In 2019, last year, the Sixth Circuit and Thomas found that a similar on-premises, off-premises distinction as the one in Madison's ordinance is unconstitutional. In this court, and I believe your Honor, Judge Sykes was on the panel in Norton in 2015, and the Eleventh Circuit in Salantic in 2011 have both found that content-based licensing schemes like the ones in Madison's ordinance are unconstitutional. Meanwhile, the city's only support, really its only support in briefing for the constitutionality of its ordinance is the U.S. Supreme Court's plurality decision from 1981 in Metromedia. But the city's reading of Metromedia asks this court to effectively ignore read and to deviate from the Fifth, Sixth, and Eleventh Circuits. To agree with the city's position, this court would need to find that when the U.S. Supreme Court said all laws that are subject to strict scrutiny, what the U.S. Supreme Court really meant was all non-commercial laws are subject to, that are content-based, are subject to strict scrutiny. But that is not what the Reed court said. Well, we do need to make an effort to reconcile the two Supreme Court opinions because nothing in Reed touched on Metromedia or the commercial, non-commercial distinction or the off-premises, on-premises distinction that was upheld in Metromedia. The Metromedia case stands for the proposition that there's a different test for commercial each, intermediate scrutiny, not strict scrutiny. And the court also said that the distinction between on-premises billboards and off-premises billboards withstands constitutional scrutiny under the First Amendment. And Reed didn't touch on that. And so we have to find a way to synthesize this case law because we can't presume that the Supreme Court meant to overrule Metromedia. Yeah, and I completely agree with you, Your Honor. And actually that's where I was going next. The rub in this case is that even if Reed doesn't apply and Metromedia does, Adams should still prevail. And the reason is because Metromedia and Central Hudson's intermediate scrutiny test only apply to sign ordinances that are purely commercial speech. Here are the city's ordinance in place when Adams filed its complaint, regulated advertising signs, both that were non-commercial and commercial. And it's in the Fifth Circuit case that about 30% of Adams' messages on its signs are non-commercial. In fact, I would argue that the fact that the city of Madison went and amended its ordinance to remove references to non-commercial speech after Adams filed its lawsuit in this case, and after the city used its old ordinance to deny Adams' permit applications, at least strongly implies that the city knew the original ordinance was unconstitutional, even under Metromedia. So, and I lay this out in our reply brief, but to get directly to your point, Judge Sykes, Reed and Metromedia do not have to, Reed did not have to overrule Metromedia. The way that will apply is, is it content-based? If it's content-based, strict scrutiny applies unless the Metromedia exception for purely commercial speech applies. And in Reagan, they said, well, in this case, the advertising sign companies have, and the record below shows that the advertising sign companies, in that case, I think it was Lamar and one other, they show both non-commercial and commercial messages. As such, Metromedia's narrow and Central Hudson's narrow exception for purely commercial speech does not apply. So in that way, the Fifth Circuit essentially reconciled the two decisions and gave both of the decisions life. In the situation in which the city is arguing, they're effectively asking this court to say that Metromedia applies every time, even if there's non-commercial speech involved, as long as there is some commercial speech involved. And that is not what the court found. And that is not what Central Hudson has found. And to my knowledge, no other circuit courts have found as such. But the bottom line here is really what, if you take away one thing from my argument, what I really want you to take away is that you don't need to read our briefs. You don't need to read the city's briefs to determine the constitutionality of the ordinance. Just read the ordinance itself. That's why we made it Exhibit A in our appendix. The ordinance exempts numerous types of signs from the need to get a permit based solely on the content of those signs. And it changes the size and spacing of the signs based on the content of the signs. In fact, like in the Sixth Circuit's Thomas decision, the Madison zoning administrator in a deposition said he has to read the signs content in order to determine how to regulate it under the ordinance. For over 30 years, Madison's sign ordinance has banned all new advertising signs, both commercial and non-commercial, from being erected in the city. And even after their post-lawsuit amendment, the city's ordinance still bans all digital advertising signs, regardless of whether they convey commercial or non-commercial messages. And conversely, the city's ordinance allows dozens of categories of signs to be erected and refurbished and moved in the city based on the content of those signs. And a few examples, I think, are helpful. And again, the ordinance is complicated, so it's hard to pull out all the examples. But in residential areas of the city of Madison and around the square in the city of Madison, political signs can be up to 12 square feet in size. Real estate signs can be up to 12 square feet in size. But church and construction project signs, and a construction project sign is basically if they're building a building, they're allowed to put up the name of the contractors and the name of the contractor, and the contractor is allowed to be up to 12 square feet in size. In other words, commercial project and construction signs are allowed to be bigger than political signs, which is unconstitutional even under metro media. Meanwhile, in other areas of the city, where, you know, the non-residential and not around the square, the size and height of signs are allowed to be bigger based on how many lanes of traffic in the speed limit of the roads adjacent to the signs. Now, remember, the city's purported purpose of this ordinance is traffic safety and aesthetics. And if you look in the, and this is in the tables in 31.15, which I would point the court to because they sort of provide, I don't want to say handy, but references to show you sort of what types of signs can go where. And so as an example, an on-premises Culver's restaurant sign on a six plus lane road with speed limits above 45 miles an hour is allowed to be 22 feet high and 288 square feet in size. Meanwhile, that same Culver sign on-premises on a two lane road with speed limits, less than 35 miles an hour has to be one quarter of the size. How do any of these regulations affect your client? If the, if the on-premises off-premises distinction is constitutional under metro media, the regulations that the city has imposed for on-premises signs don't really matter. They, they do. And the reason they do is because effectively the on-premises signs are basically when a government says one type of speech is allowed, but another type of speech is not allowed, that impacts the other type of speech that's not allowed. In other words, Adams can't put up an on-premises advertising sign on its own. Your client only has off-premises advertising signs, as I understand it. That's not actually true. There is an on-premises sign on the top of Adams building. You're not litigating that. You're litigating your money-making signs. The point is that all of these other restrictions and sizes, in other words, Adams can't put up a 32 foot square foot construction advertising sign, but the construction advertiser can. Adams can't put up a political advertising sign. That's the question, Mr. Potts, which is that if the on-premises off-premises distinction is not met, the case goes away, with the possible exception of the digital challenge. Well, I don't agree that it's constitutional under Metro Media, but there are, well... The ruling in the Metro Media majority opinion. Yeah. I mean, there are numerous other provisions that we've challenged and the ordinance is vague and overbroad, which I can get to also, and as a prior restraint. For example, there, there were at one time definitions of commercial message and non-commercial message. And then after we sued the city in their attempts to fix the ordinance, they deleted completely the definitions of commercial message and non-commercial message. So now the zoning administrator has no guidance for determining what is the commercial or non-commercial message. There are provisions that only apply to advertising signs that say, you can't erect, repair, maintain the signs. And there are no definitions as to what that means. There's no time limit for when a permit is denied. So for example, all of Adam's 26 permit applications that were filed, the city had no, the city zoning administrator had no time limit. Well, if the ordinance says promptly. The ordinance says promptly, but there's no time limit. And in that case, I think it was 60 days. But the point is this U.S. Supreme court has said that you need definite standards. You need time limits in these kinds of situations. I mean, the bottom line here is you have a zoning administrator, Mr. Tucker, who gets to make all of these decisions. He's unelected and he gets to make every decision about whether it's an on-premises sign, whether it's an off-premises sign, whether it's a political sign, whether it's an advertising sign, whether the message is commercial, whether the message is non-commercial. That is unconstitutional. That is not okay based on the content of the sign. So you essentially have one human in Madison reading a sign and deciding whether that's okay or not. And that is exactly what the Supreme court has said should not happen. I just want to reserve some time, Mr. Yes, I'm sorry. I will reserve the rest of my time. Thank you. All right. Thank you. Mr. Blanion. Good morning. May it please the court, Barry Blanion with Boardman and Clark on behalf of the city of Madison and Matthew Tucker, defendants and appellees in this case. Is my sound okay? Yes. Thank you. I'd be happy to take the arguments in any manner that the court would like. I do think there are a few points to clarify and starting perhaps with the last there in the 26 applications that were submitted in this case, the record demonstrates that the applications did not list any of the content that would be contained on the billboards themselves. They were submitted as billboard applications and only billboard applications have been submitted by Adams to the city of Madison. They've not submitted any real estate sign applications, political sign applications or otherwise. The city of Madison has had a message substitution provision throughout the relevant time period, which states that any sign that is up in the city of Madison can contain a non-commercial message. And that was the teaching from Metro Media that to the extent that a regulation impacts non-commercial speech more negatively than most. Excuse me, ma'am. Correct. The plurality decision, the majority decision was the decision focused on the non-commercial commercial distinction as being a valid and appropriate distinction and setting forth the analytical framework to evaluate both the non-commercial and commercial aspects of the case. The standing and claim preclusion issues, Your Honor, I did want to touch on the fact that with respect to claim preclusion, the judge had issued an order requesting supplemental briefing on that issue. The parties did brief it and certainly there is no issue about it being properly before this court or having been properly decided by the district court below. It's a little unorthodox, isn't it, if you didn't seek summary judgment on preclusion grounds? Your Honor, this court has already addressed that particular issue in Muhammad versus Oliver and recognized that this court also has an interest in ensuring finality of previous decisions. I will note that in light of the digital ban, any decision on claim preclusion would not be dispositive and fully resolve the case. With respect to that digital ban, the digital ban Madison has in place with respect to signs, it applies across the board to all sites. There is no distinction based on content. There is no restriction otherwise that allows for some digital signs in some circumstances, but not in others. In Madison, digital signs are prohibited. It is a time-placed manner restriction, therefore, and evaluated under intermediate scrutiny in that sense. With respect to the commercial speech impacts, Central Hudson and Metro Media set the stage, explained to this court how the analysis should proceed, and that is the same analysis that this recognizing the framework that this court must apply when evaluating a billboard case. The First Amendment is not a one-size-fits-all solution. It is complicated and messy. There are different rules that apply to adult entertainment establishments, to abortion buffer zones, and to billboards. Metro Media sets the framework there, and as the Supreme Court has repeatedly admonished, this court should not assume impliedly that a Supreme Court decision has been overruled. The instruction is that this court and all lower courts must wait until the court provides clear guidance that the decision no longer stands. This court was able to do so in the context of the Norton decision because in the Reid decision itself, the Supreme Court majority made clear and clarified that the lower courts had been overextending the Ward decision, and this court recognized this much. What Adams is requesting this court do here is much more aggressive and expansive, and to construe the Reid decision much more broadly to an area that is sacrosanct in First Amendment jurisprudence, that is, this commercial-noncommercial distinction. It's important to recognize that historically, commercial speech received no protection under the First Amendment, and protection for commercial speech is a fairly recent innovation within the last 50 years or so. And since then, we have extended some protections, and Central Hudson has set the framework for commercial speech. And certainly, Reid raises some questions about how we proceed forward, but the important answer is we look to Supreme Court precedent to decide the path. Metro Media sets the path, and as the district court correctly held, the commercial speech aspects survive intermediate scrutiny under Central Hudson. The noncommercial impacts survive scrutiny as a reasonable time, place, manner of restriction, as does the digital ban. Perhaps the place that I should have started, at least analytically, is the standing arguments, and I don't want to spend too much time on those, but I did want to address the district court's ruling that Adams' attempt to broadly challenge aspects of the ordinance that have no impact on injury, causation, redressability, are not something that just have to be established once as a gating measure in order to bring a case, but the Supreme Court's decisions have made clear that standing is not dispensed in gross, that it has to be decided for each claim and for each form of relief sought, and the district court appropriately limited Adams to challenge the provisions that could potentially affect Adams' business. But there's another part standing that is also... Target-rich environment, isn't it, Mr. Flanagan? We've got a lot of provisions in this lengthy ordinance that apply to advertising signs, and hence, Adams' business. So there's a lot left. There are a lot of opportunities for Adams to bring challenges, although we think that they need to be framed in the context of the permit challenges, the permit denials that form the basis for the appeal. And many of the provisions on which Adams' permits were denied are related to size or setback or location or construction materials that survive scrutiny, and therefore, this court should not reach broader principles if their permits would be rejected on other grounds that simply survive scrutiny. Are these challenges limited to the specific permit denials, or is this... I perceive this to be a broader pre-enforcement, facial pre-enforcement challenge in the ordinary constitutional sense, not just an as-applied challenge to the permit denials. We certainly recognize Adams' attempt to do so, Your Honor, and we also recognize that, in some respects, these are labels that shouldn't limit the opportunity for the court to evaluate certain issues. But there are important distinctions here. One is that facial challenges or prospective relief, and as applied, allow for damages or retrospective-looking relief. One of the arguments that we raised and that the evidence below shows, Your Honor, is that Adams, throughout the entire course of this litigation, has maintained the right to build a sign in the City of Madison consistent with the regulations that the City has in place on signed credit provisions and on settlements that Adams had previously entered with the City. If they have an opportunity to build a sign now, then a broad, sweeping challenge would not produce any sort of redressability for Adams because they have the right now to build a sign. They are trying to mount a broad challenge, and we respectfully submit that they do not have standing to do so because the particulars that they submitted to this court and to the court below relate to the 26 permit applications, and the particular facts do matter and shape the kind of controversy that this court has to consider. And the district court below disagreed and reached those issues, but we also believe that they're appropriately framed as a matter of constitutional avoidance. That is, if the City appropriately denied Adams 25 of the 26 permit applications, one was provisionally granted. If those permit applications were appropriately denied, this court does not need to reach any further because Adams has suffered no harm. What is your understanding of the scope of the damages claim? Your Honor, the scope of the damages claim, as asserted, was actually quite broad, extending well beyond any statute of limitations period that would allow and was not anchored or framed against the particular permit applications that were submitted and denied. We did raise those as arguments, also additional reasons for granting summary judgment to the court below, and because the court's ruling, it didn't reach the issue of damages. But particularly in light of the fact that at all times throughout this litigation, Adams has had the opportunity to build a sign in Madison, assuming it can find a suitable place to do so, that is, a landowner that's willing to lease the property to Adams, and Adams' willingness to make the business decision to go forward and do that, we submit respectfully that Adams can't argue injury in fact in a broad sense. The district court correctly concluded, and we do not contest injury in fact with respect to the permit applications, they want bigger signs, they want digital signs, and the city denied them based on the ordinance provisions, and Adams has a right to bring that challenge. I thought the ordinance banned new off-premises advertising signs. The city of Madison has a provision that allows in certain circumstances where redevelopment occurs for that sign to be taken down and replaced with a sign of equal square footage elsewhere in the city. Right, no, I understand that provision, that's very narrow, but you've just made an assertion that that Adams can enter into a lease agreement with any property owner anywhere in the city and apply for a permit to put up an advertising sign. I thought new off-premise advertising signs have been banned since whenever this, the inception of this ordinance, 87, something like that? No, in the 70s, right? This was a Paul Sondland thing. There have been, it has been in place for some time, your honor, the prospective ban on construction of new billboard signs, correct, and I it sounds as though I have created a confusion here. What I'm referring to specifically, your honor, is Adams' right to build a new billboard based on settlements that have previously been entered with the city and also replacement credits under the provision of the ordinance that allows for a sign that was removed because of redevelopment. Okay, to the extent that Adams was grandfathered in with the inception of the original advertising sign ban back in the 70s. Right, my point is that they've got, unlike other applicants who don't have that right, they have a special grandfather powers that allow them to build a sign right now, assuming that other provisions are met, that other zoning and setback and other rules are complied with, but. Thank you, that clarifies. Thank you. I appreciate that opportunity. We do think that the important framework needs to stay on Supreme Court precedent and that the Supreme Court in Metro Media itself explained that billboards are their own medium and deserve their own analytical attention and until the Supreme Court says otherwise, that is the framework that this court in the past has applied as in Levy, as in the Lucci decision and others to recognize you separately consider commercial and non-commercial impacts and under the commercial impacts, the central Hudson guidance controls. It is important to recognize how far reaching a decision would be to the contrary. It would abandon the long-standing distinction between commercial and non-commercial speech. The only way that that distinction can ever be made is based on the content of the speech itself, as the Supreme Court recognized in central Hudson establishing that distinction. But because commercial speech is recognized as inherently more robust, we recognize that differential treatment is appropriate under the law. And this court should maintain that distinction and under that distinction, Madison's ordinance survives Adam's challenge here and the district court's decision should be affirmed in all respects. I'd be happy to answer any other questions. But hearing none, I will stop at that point. I don't hear you defending the district judge's brief on that. I mean, you devoted a lot of time in your briefing to preclusion, and you've said nothing about it so far. Well, thank you for the opportunity to address the claim preclusion, and I'd be happy to. And yes, we do believe that it is a defensible and strong decision and an appropriate one based on the law. This court's decision and stare cycle recognize that the declaratory judgment exception under state law, it applies only when declaratory relief is the sole relief that is sought. If there is some other form of relief that is coercive relief that is being sought, then the declaratory judgment exception does not apply. The amended complaint that's in the record, this may or may not be the operative complaint that the stipulated judgment attached it to, but this is what's in the record. The claims for relief are all declaratory, with the possible exception of the claim for relief in the first and second causes of action, which requested an order declaring that and requiring the commencement of condemnation proceedings under section 3210 of the Wisconsin statute. So it's partially injunctive, I guess, with respect to the takings claims. But the constitutional claims were purely declaratory. Your Honor, if I may address those sort of in backwards form. First, the stare cycle decision and the declaratory judgment exception recognize that any time relief in the case is sought that goes beyond declaratory relief, then that case falls outside of the declaratory judgment exception. And so it is not as significant under Wisconsin law that there are separate claims with separate forms of relief and that you parse out the impact of claim preclusion on a claim by claim basis, but rather on the case as a whole. The fact that an amended complaint may have been submitted in this case and that we don't know it has no legal significance under the claim preclusion analysis under Wisconsin law and the most recent decision in Teske that we rely on in our briefs. The critical question is not what claims were in fact asserted, but what claims could have been asserted in that case. And the previous complaints demonstrate beyond question and as a matter of law, that the constitutional claims were asserted at one point in time, even if they were removed in a later complaint, that wouldn't change the Teske analysis, which asks, could they have been brought in the case? And the fact that they were indeed demonstrates as a matter of law that they could have been brought. So the declaratory judgment exception does not apply. The 1993 settlement provided a final resolution to these particular claims with prejudice. And the argument that that settlement should not be given preclusive effect could have disastrous effects long-term for all litigants seeking finality in the course of litigation. As this court noted, the city did preserve these claim preclusion arguments as an affirmative defense. And to the extent that the case proceeded any further beyond summary judgment would have had an opportunity to fully address these issues of claim preclusion with the court. Mr. Bonnie, is the text of the ordinance to the extent that it regulates advertising signs the same now as it was then? Apart from the digital ban, the substantive impact on Adams and on advertisers looking for billboards is the same. The ban on billboards that Adams seeks to challenge to build more billboards was the same then as it is now. The permitting requirements are the same? The general permitting requirements are the same, Your Honor. I don't know for certain that all setback provisions are identical or things along those lines. Yeah, the specifics of that really aren't important. But in terms of the general regulation of advertising signs, it remains the same as a textual matter now as it was then with the exception of the digital sign provision and the the 2017 amendment to the advertising sign provision to excise non-commercial advertising signs. I believe that's correct, Your Honor. Aside from provisions that we don't think materially impact the challenge, for instance, the right to move a sign because of redevelopment was a provision that I believe happened after the lawsuit. I do think it's important to stress that the record as to what the ordinance says was established and built through affidavit that the district court appropriately found demonstrated what the provision said. Even though it was repealed and replaced, it was done so as an administrative matter to help clean up a broader sign code provisions. They do not affect the billboard provisions that are being challenged in any meaningful way as the district court found. How is it that a copy of the ordinance as it stood at the time of the earlier litigation could not be found? Well, I think that the challenge is really one of codification itself, Your Honor, as is the case with Congress. Individual laws are passed and the U.S. code is really just a compilation. So trying to establish exactly what the law looks like at any given time, particularly before the internet was as robust as it is now, means that you have to stitch together those individual bills to see what the law looks like at any given snapshot in time, which is precisely what the clerk of the city of Madison did in order to provide a clear and authoritative understanding historically of what the law was. The benefit that state legislature or state statutes have and that the U.S. code has is a more regular codification of that U.S. code or of state legislatures. So these, these claimed the constitutional claims challenging the provisions of the sign ordinance as they relate to advertising signs are the same as the claims that were brought in the litigation in the 1990s? Your Honor, it's our position that in all material substance, yes, and Adams in the 1990 litigation raised the issue of this off-premise on-premise distinction as one of the substantive points that they were directly attacking and challenging in that is the same substantive distinction that formed part of the court's holding in the majority decision in Metro Media. It also importantly was recognized in Reed itself in the concurrence written by Justice Alito as something that would not be impacted by the court's holding in Reed. And importantly, Alito and Sotomayor and Justice Kagan all signed on to Alito's concurrence. They were all necessary to the holding in Reed. And so it is particularly challenging not only because of the principle and decisions like Agostini that this court should not impliedly assume overruling, but this court should also take care and recognize the words in Reed itself that this off-premise on-premise distinction is one that should survive constitutional muster under intermediate scrutiny. Seeing no more questions, I thank the court for your time. Thank you very much. Mr. Potts. Thank you. First of all, starting with a quickly with a claim preclusion issue, we don't have the ordinance from 1990. The earliest version we have is from 2007. We don't have the final operative complaint from 1990. We have the first amended complaint. And I would ask you, I think Mr. Blanion has mischaracterized the Wisconsin Supreme Court's decision. That decision said, and I quoted the language before, it said the declaratory judgment is only binding as to matters which were actually decided and is not binding to matters which might have been litigated, which is the exact opposite of what Mr. Blanion has been arguing on that point. Now, the city has also said... Mr. Potts, do you want to speak to Stericycle though? Well, I don't think Stericycle changed the Wisconsin Supreme Court's analysis in Barbian in any meaningful way. I also don't think that what Mr. Blanion is saying is correct in that, first of all, no damages were requested in any of the claims in the original action. I think the idea that they asked for a declaration that they could go bring a second condemnation proceeding is not a request for damages. Well, Wisconsin 3210 allows for the recovery of compensation for taking, correct? It does, but it would require a separate new action, not the action that was brought in the 1990 litigation. There's a separate statutory process. They would have to file a new action to start essentially the compensation process. Two other quickly things I'd like to talk about, Mr. Blanion kept referring to the fact that Adams has a credit and could build a new billboard. First of all, Adams can't build any new advertising signs anywhere in the city other than one that's a replacement, and this replacement credit is only for very narrow portions of the city where it's not very easy to find land rights to be able to build a new billboard. So to say that Adams isn't harmed by the City of Madison ban on all advertising signs of any size for 30 years because Adams now has one credit in a small place of the city and hasn't been able to identify land rights is frankly disingenuous. The last thing I'd like to talk about, and if the court would allow me, is the digital ban, and I just don't want there to be any confusion. The digital ban is the City of Madison allows something called electronic changeable copy signs, which are different from digital signs. They're signs like a Walgreens sign that has electronic text that changes that you would around town. Those are allowed for on-premises signs. Again, advertising signs can't do anything, so that is a very similar on-premises, off-premises digital issue as was addressed in the Reagan case, and in fact is more onerous. The U.S. Supreme Court has actually said a ban on an is even subject to a heightened level of scrutiny because you can't even speak at all in that fashion. So with that, unless the court has additional questions. All right, I think we're concluded. Thank you very much. Our thanks to both counsel and the case is taken under advisement.